A. L. NASH v. THE STATE.

No. 12268.   Delivered April 23, 1930.
Rehearing denied June 25, 1930.
Reported in 29 S. W. (2d) 359.

The opinion states the case.

*Wynne & Wynne,* of Kaufman, and *Jed C. Adams,* of Dallas, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for swindling; punishment, two years in the penitentiary.

Having concluded that our former opinion was not correct, same is withdrawn and the following substituted therefor:

We think the indictment sufficient, and that the motion to quash same was properly overruled. Same alleged that the property described therein, to-wit; a cashier's check for $2690.82, was obtained by appellant by means of false pretenses, devices and acts, and fraudulent representations made by him to Mr. Trantham, cashier of a bank, namely, by drawing and presenting a draft, which is copied in the indictment, upon W. C. Biggers & Company, and attaching thereto twenty-eight weight certificates (hereinafter for convenience referred to as tickets) issued by Coleman, a certified public weigher, at Kemp, Texas,—the substance of said tickets being set out in the indictment, and upon the face of which draft as so set out, where the words "For twenty-eight bales of cotton for which tickets are attached." It was also alleged that by these things appellant represented and intended to convey to Mr. Trantham that he, appellant, was the buyer of said cotton as represented by said draft and tickets, —and that he owned said tickets and had a right to attach them to said draft as collateral therefor; also that said tickets represented the actual bales of cotton which appellant had bought and which were then in possession of the public weigher at Kemp, Texas, and that appellant thus induced Trantham to issue and deliver to him said cashier's check in order that appellant might acquire title thereto and possession thereof. The indictment further alleges:

"And the said J. Roy Trantham, agent of the aforesaid corporation, then and there acted and relied upon the said representations so made and so used by the said A. L. Nash as represented by the said draft upon W. C. Biggers & Co., and the attached weight certificates accompanied by the said representations that he, the said A. L. Nash was the buyer and owned the said twenty eight bales of cotton as represented by the said weight certificates and had theretofore bought the said twenty eight bales of cotton in due course of trade at Kemp, Texas, and the said J. Roy Trantham then and there issued the said cashier's check payable to the order of First National Bank of Kemp, Texas, and delivered the said cashier's check to the said A. L. Nash and the said A. L. Nash did then and there and thereby and in said manner acquire the title and possession of the said cashier's check for the value of $2690.82, and did thereafter appropriate it to the use and benefit of him, the said A. L. Nash:" etc.

While the false pretense might consist wholly of acts of appellant, Speer v. State, 50 Texas Crim. Rep. 272; Blum v. State, 20 Texas Crim. App. 578, if it be alleged that the owner of the property relied on same, still we think the quoted averment sufficiently states that the presentation of the draft with the tickets attached was accompanied by representations that appellant had bought and owned the twenty-eight bales of cotton as represented by said tickets, and that he had bought said cotton in due course of trade at Kemp, Texas, and that it was at said place and represented by said tickets. The allegations concerning the representations, the meaning and intent thereof, and the effect thereof are repeated with much detail throughout the twelve pages of this indictment. If the drawing and presenting of the draft with the tickets attached had been relied on and accepted by Trantham, and if these alone had in fact induced him to part with the cashier's check, this would have made out a case, and such allegation would have been enough, but, as said, this indictment went further. Escue v. State, 88 Texas Crim. Rep. 447. Nor do we think it good cause for complaint at this indictment to urge that some custom of trade or course of dealing should have been alleged. This is not a civil suit possibly calling for extraneous averments of matters which might enter into a contract. The question is not whether the false representations were of all things which might have been said, but were the things said or done false, and were they relied on, and did they induce the owner to part with his property. See Harrison v. State, 44 Texas Crim. Rep. 244; Brown v. State, 62 Texas Crim. Rep. 592, and authorities cited in Blum v. State, 20 Texas Crim. App. 578.

As we view this case, it turned upon the jury's belief of the falsity of the particular acts and representations of appellant, especially regarding the tickets, and the fact that he had bought certain cotton which was in the yard at Kemp and represented by said tickets, by means of which he acquired from Trantham the cashier's check referred to. We fail to see the materiality of the testimony,— objection to which is complained of in bill of exception No. 6,— seeking to show that under other circumstances and upon different facts Trantham believed or knew that appellant had authority to draw drafts upon Biggers & Company. The record fully sustains the proposition that he had no right or authority to draw such draft and attach void or worthless weight certificates thereto, which he admitted he had stolen from the public weigher at Kemp.

There is another bill of exception setting out that the trial court refused to let Trantham testify that he and his bank contended that the draft drawn and presented by appellant, as part of the means by which he secured the said cashier's check, was a valid and legal obligation against Biggers & Company,—the drawees of such draft. The action of the court below was correct. That there might be questions of agency, etc., so involved as to give rise to Trantham's belief, aside from his reliance upon the fraudulent tickets attached to the draft, would not operate to negative the guilt of appellant, and such issues could have no place in this record.

The cashier's check issued by Trantham and delivered to appellant was made payable to a bank at Kemp. Appellant sought to show that though said check was delivered to him, it could not be used or cashed without the endorsement of said Kemp bank. Testimony offered supporting this proposition, was properly rejected. Trantham testified that he and his bank parted with both title and possession of the cashier's check. It would be as much a violation of the statute for one to swindle for the benefit of a third party as for himself. Injury to the party alleged in the indictment to have been defrauded, is the requisite,—not benefit to the alleged swindler. This in substance disposes of the complaints in bills of exception Nos. 1, 2, 4 and 7.

We deem the facts to be entirely sufficient. Appellant was a cotton buyer, buying cotton in Kaufman county for W. C. Biggers & Company of Waxahachie. Mr. Coleman testified that he was a certified public weigher at Kemp, Texas, and as such weighed cotton for those who might bring same to his yard. When he weighed a bale of cotton he issued therefor a weight certificate or ticket showing the weight, number, condition of the cotton, etc., which weight certificate was delivered to the party who brought the cotton to the yard. When such bale was thereafter removed, shipped or other- wise disposed of the ticket was returned to him, and he kept these void or cancelled tickets in a locked box in the yard. He said that in January,—a short time before appellant presented the said draft and weight certificates to Trantham,—appellant came to his yard osten- sibly looking for a lost bale of cotton. Appellant and Coleman looked through the locked box of cancelled tickets. Shortly after this occurrence Coleman said he missed ninety-nine of said can- celled tickets. He identified twenty-eight tickets shown him as part of the ninety-nine thus taken from his box. Said twenty-eight tickets were shown to be tickets received from appellant by Tran-

tham attached to either the draft in question or to some one of three other fraudulent drafts drawn by appellant upon Biggers & Company under circumstances like those in this case. Mr. Patterson, a member of the firm of Biggers & Company, testified that appellant admitted to him that he stole these tickets from a cotton yard at Kemp. This witness said they never received any cotton called for by said tickets. Appellant admitted to Patterson that he was short about seven thousand dollars.

The State's motion for rehearing is granted, the judgment of dismissal and reversal is set aside, and the judgment is now affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant renews his attack upon the indictment. That question was seriously considered in more than one consultation at the time the state's motion was before us and after exchange of views the conclusion was reached that the indictment sufficiently charged the offense. However, because of the earnestness with which the criticism is again urged we have further reviewed the indictment and find no reason to alter the conclusion heretofore reached. To the mind of the present writer much significance attaches to the words written into the acceptance of W. C. Biggers and Co. by appellant "For 28 bales cotton *for which* tickets are attached." (Italics ours.) It plainly appears from the indictment what occurred when appellant presented the acceptance and received therefor the cashier's check for $2690.82. Following this is an averment that appellant did "then and there and thereby" represent that he was the buyer of the 28 bales of cotton mentioned in the acceptance and the attached tickets, and that appellant was the owner of said tickets, etc. It is appellant's contention that in using the word "thereby" in connection with "then and there," the pleader has in effect averred that no further representations were made by appellant than those legitimately inferable from the face of the acceptance itself. To adopt appellant's view would at least be extremely restrictive.

After appellant secured the cashier's check for $2690.82 from the Kaufman bank he took it to Kemp and obtained in exchange for it two cashier's checks from the Kemp bank, one payable to appellant for $2650.30 and one for $40.52 payable to Biggers and Co. Appellant deposited his check in a Dallas bank. The cashier of the

Kaufman bank testified that when the $2690.82 check was delivered to appellant that he (the cashier) parted with the possession and the bank parted with the title. Appellant then offered to prove by the cashier that at the time he delivered the check to appellant he did not intend for appellant to get the money and did not intend to deliver title to the money to appellant, but that he delivered the check to appellant to take it to the Kemp bank in whose favor it was drawn. Upon objection from the state the offered testimony was excluded. Appellant complains of this ruling in several bills of exception. What the cashier's intentions were relative to who should ultimately get the proceeds of the check seems immaterial. He parted with the possession and title to the check when it was delivered to appellant. The issuing bank became obligated to pay the amount thereof when the check was presented and payment demanded by a legal holder thereof and never expected to receive back the check free from its face obligations.

Appellant sought to have the following special charge submitted:

"You are instructed as a part of the law in this case that whenever a check, draft or other negotiable instrument is made payable to a person or order, bank or corporation, or to his or its order, that such check, draft or order has no value in the hands of a third person unless the same has been endorsed by the original payee, or is in the hands of the original payee."

We think the requested charge is too broad in its language. The endorsement of the payee is evidence of the transfer of the check, but its absence does not necessarily affect ownership or value. Aside from this the refusal of the charge does not occur to us to have been erroneous in view of Art. 1548 P. C. which reads as follows:

"It is not necessary in order to constitute the offense of swindling, that any benefit shall accrue to the person guilty of the fraud or deceit, nor that any injury shall result to the person intended to be defrauded, if it is sufficiently apparent that there was a wilful design to receive benefit or cause an injury."

There is no question but that when the cashier's check was issued and delivered to appellant the bank so issuing it was solvent and the check was worth its face value. The fact that the issuing bank would under ordinary circumstances not be called upon to pay it unless endorsed by the payee, seems beside the question in view of Art. 1548 (supra). It is apparent that appellant not only designed to receive a benefit from his fraudulent acts, but that he

actually did so and at the same time caused injury to the bank issuing the check.

The motion for rehearing is overruled.

*Overruled.*

### CONCURRING OPINION ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The indictment occupies about twelve pages of the transcript and its length precludes a verbatim reproduction here. Stripped of all verbosity and legal verbiage, it in effect alleges that the swindling consists in obtaining from The Farmers & Merchants National Bank of Kaufman a cashier's check in the sum of $2690.82 by means of presenting to and transferring to said bank a draft drawn on Biggers & Company for $2690.82, with twenty-eight cotton weight certificates attached thereto as collateral. We think the effect of the allegations fairly construed is to charge in substance that appellant intended by presenting such weight certificates to represent that he was the owner of and in possession of the cotton described in said weight certificates which he had theretofore bought in the ordinary course of dealing. As described in the indictment, the draft which the appellant exchanged for the cashier's check mentioned above is set out in the indictment as follows:

"Accepted Jan. 18 1928

With interest at 8% per annum

W. C. Biggers & Company per A. L. Nash

The Farmers & Merchants National Bank    .    No. 419

Kaufman, Texas Jan 18 ·1928

At 60 days sight pay to the order of F & M Bank        $2690.82

Twenty Six Hundred Ninety & 82/100 Dollars.

For 28 Bales Cotton for which ~~Bills Lading~~ are attached
                    Tickets

To W. C. Biggers & Co.

At the Farmers & Merchants National Bank ⎱ F. & M. Bank
            Kaufman, Texas.                          ⎰          Seller."

In Art. 1545, P. C., 1925, it is said: " 'Swindling' is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right, by means of some

false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the right of the party justly entitled to the same."

In construing this statute, this court has used the following language:

"It may be laid down as a general rule of the interpretation of the words 'by some false pretense,' which are used in the statutes, that, whenever a person fraudulently represents as an *existing fact* that which is not an existing fact, and so gets money, etc., that is an offense within the act. (Bouvier's L. Dic., 'False Pretenses.') But 'it is not necessary that the pretense or pretenses should be in words; that there may be a sufficient false pretense, within the meaning of the act, to be implied from the acts and conduct of the party, without any verbal representation of a false or fraudulent nature.' (2 Arch. Cr. Prac. & Plead. (8th ed.), p. 1386.) The conduct and acts of the party will be sufficient without any verbal assertion. (2 Whart. Cr. L. Sec. 1170.) 'Any designed misrepresentation of existing conditions by which a party obtains goods of another is within the statute.' (Id. Sec. 1135.)" Blum v. State, 20 Tex. Cr. R. 578.

While the weigher's certificates accompanying the draft are not negotiable, they are non-negotiable instruments coming within the purview of Arts. 569 and 570, of the Revised Civil Statutes, 1925, which are quoted as follows:

"The obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another."

"The assignee of any instrument mentioned in the preceding article may sue thereon in his own name. He shall allow every discount and defense against the same which it would have been subject to in the hands of any previous owner before notice of the assignment was given to the defendant. In order to hold the assignor, drawer or endorser as surety for the payment of the instrument, the assignee shall use due diligence to collect the same. Such diligence can only be waived in writing."

Similar facts were before the Supreme Court of this state in the case of Stamford Compress Company v. Ft. Worth National Bank, 105 Tex. Rep. 44. The Compress Company issued a receipt as follows:

"No. 290. Stamford, Texas, May 13, 1908. No. Bales 42.
"Stamford Compress Company. Received from West Cotton

Yard for account of Will Rives, Mark......at owner's risk, forty-two bales cotton. Not responsible for water damage or loss or damage by fire. This receipt must be returned on delivery of the cotton and is non-negotiable.

(Signed)   T. O. Purkett, Supt."

For a valuable consideration Rives delivered the receipt to the Fort Worth National Bank, and without notice of such delivery the Compress Company delivered to Rives the forty-two bales of cotton. The bank sued the Compress Company for the value of the cotton. The Supreme Court, referring to the two statutes above quoted, made the following remarks:

"It follows as a necessary conclusion that the Compress Company had the right to deal with Rives as owner of the cotton until notice was given to it of the transfer of the receipt to the bank. Rives gave such reason for not presenting the receipt as under the circumstances was reasonable and the Compress Company had the right to rely upon his statement. Swearingen v. Buckley, 1 Texas Unreported Cases, 421; Daniel Neg. Inst., Sec. 742."

"There is no dispute of the proposition that the assignment and delivery of the receipt by Rives vested the title to the cotton in the bank, which could have maintained an action for it."

"We repeat that we make no contention against the claim that the title to the cotton passed to the bank."

On the facts before them the Supreme Court decided the controversy in favor of the Compress Company upon the sole ground that the latter was entitled to regard Rives as the owner of the cotton until notice was given them that the receipt had been assigned to the bank. In form the receipt described in the case last mentioned is somewhat different from the certificates under consideration in the present appeal, but taking into account the statutes bearing upon the subject of public weighers the certificates in the present instance, so far as they relate to the issues involved, are the same in substance as those described in the opinion of the Supreme Court.

In Chap. 6, of Title 93, Revised Civil Statutes, 1925, page 1598, provision is made for the appointment of a public weigher. His duties are defined. He must take an oath of office and must give bond. His deputies must likewise give bond. He must give receipts in the form prescribed by the Commissioner of Markets & Warehouses, which shall be known as a State Certificate of Weights and Measures. The public weigher shall keep books showing a record of the commodities weighed, and they shall be separately stored by him

in lots distinguishing various consignments from others. The commodities weighed shall be tagged. None but the public weigher can perform the duties imposed upon such weigher by statute. It seems manifest that under the statutory provisions the public weigher is the custodian of cotton weighed by him pending its demand by the owner and until presentation of the receipt issued to the person for whom the cotton is weighed.

That to support the indictment it is essential that in addition to the averments therein contained there be a specific statement that the accused in terms told the banker that the draft was in payment of the twenty-eight bales of cotton and that they were stored in the yard mentioned in the tickets, is deemed in conflict with the necessary implication arising from the draft, the weigher's certificates and the averments contained in the indictment. It is averred that the representations of the appellant, with the documents, as set forth in the indictment, produced the belief in Trantham (the agent of the bank), "that the said A. L. Nash was the buyer and owner of said twenty-eight bales of cotton represented by said weight certificates and had theretofore bought the twenty-eight bales of cotton in due course of trade at Kemp, Texas, and that said weight certificates were valid, legal and valuable, and represented the actual bales and weights of cotton then and there in the possession of the said Gaston Coleman, a certified public weigher." From Ruling Case Law, Vol. 15, p. 1123, the following quotation is taken:

"The courts will take judicial cognizance of commercial usages and customs which have become so well established and generally known that they are considered to be a part of the law merchant of the country. * * * Courts will likewise notice customs pertaining to business in general, and the manner of conducting it. * * * The general custom and course of business in any trade if they be sufficiently notorious are also proper subjects of judicial observation."

Cotton is the chief agricultural product of the state of Texas, which produces annually about one-fourth of the cotton that is grown in the whole world. Cotton is prepared for shipment in bales of an average of 500 pounds in weight. A greater part of the state's production of cotton is exported to foreign countries or shipped to points in other states of the Union. These facts are of common knowledge. It is likewise a matter of common knowledge that the certificates issued by public weighers in accord with the laws of the state are used in *due course of trade* as symbols or tokens of the bales of cotton in the conduct of the financial transactions necessary to facilitate the marketing of the commodity.