## A. W. Speckels v. The State.

No. 18358. Delivered May 20, 1936.
Rehearing Denied June 17, 1936.

The opinion states the case.

*Polk Shelton* and *Emmett Shelton,* both of Austin, for appellant.

*James P. Hart,* District Attorney, *E. G. Moorhead* and *W. K. Miller,* Assistant District Attorneys, and *Lloyd W. Davidson,* State's Attorney, all of Austin, for the State.

KRUEGER, JUDGE.—The appellant was convicted of the offense of theft of five hundred dollars, and his punishment was assessed at confinement in the state penitentiary for a term of two years.

The indictment in this case is in the usual form charging ordinary theft of five hundred dollars from August Fuhrmann. Mr. Fuhrmann testified in substance as follows: "The first conversation I had with the defendant about this matter was a few days before the first of August, 1934. He already had some of my money and a note. He said that he needed five hundred dollars more. He said, 'I will give you a good clear deed of trust on 813 or 815 Lambie Street. I says, 'Is there any indebtedness against it?' He says, 'That is clear; there is no indebtedness against it.' He says, 'I will make the note for two years, but I will pay it in less than two years.' On the morning of August 14th the defendant came to where I was at work; he handed me a check and said, 'Your wife told me to tell you to sign this check. I then signed the check; he had the check already drawn in the sum of five hundred dollars. I believed his statement that the property was clear of liens and I relied on it. Had it not been for that statement I would not have loaned him the money. I gave him the check and he delivered the note and deed of trust to me. I intended to part with the title and possession of the money. This all took place on the same day. A few months later I found out that there were two prior existing liens against said property to secure loans in excess of the value of the property." Appellant denied that he told Fuhrmann the property was clear of liens.

Appellant's first contention is that if the State's testimony as above related is accepted as true and that offered by him be disregarded, it shows a case of swindling and not theft. Therefore, the main inquiry is: Did Mr. Fuhrmann, the injured party, intend to part with the title and possession of the money and did he do so upon the false representations as to a present existing fact and past event? If so, the offense is swindling; if not, it is theft. Texas Jurisprudence, Vol. 39, p. 1057, lays down the following rule: "To constitute the crime of swindling, the false pretense or representation must relate to an existing fact or past event; mere false promises or professions as to future happenings or events are insufficient." We think that the facts as herein above set forth bring this case within the term swindling and not theft. The false statement and representation which appellant made to Fuhrmann,

according to Fuhrmann's testimony, was that there were no valid existing liens against the property at the time he obtained the loan. That Fuhrmann intended to part with the title and possession to five hundred dollars at the time the note and deed of trust were delivered to him by the appellant is not controverted. Hence the false representation was only as to a present existing fact. We think that the facts in this case are very similar to the facts of Brown v. State, 138 S. W., 604, and the same rule there announced was reaffirmed by this court in the case of New v. State, 83 S. W. (2d) 668.

The State has filed a very able brief in which it cites us to the case of Sherman v. State, 62 S. W. (2d) 147, as authority for sustaining its position, but we think that the facts in the Sherman case are not at all like or similar to the facts in the instant case. In that case the false representations related to some future act; something to be done in the future by the accused which brought that case within art. 1413, P. C., 1925, and differentiates it from the instant case. The case of Contreras v. State, 39 S. W. (2d) 62, and the case of De Blanc v. State, 37 S. W. (2d) 1024, show a state of facts which make them easily distinguishable from the case at bar. In the case of Hoovel v. State, 69 S. W. (2d) 104, the facts show that the false representations, which the appellant made to Holcomb, consisted of what he was going to do in the future, that is, that he was going to exchange for Holcomb three hundred shares of Cities Service Common Stock owned by Holcomb for one hundred shares of Cities Service Preferred Stock, which exchange was to be performed and the Preferred Stock delivered to Holcomb within sixty days. This he failed to do but immediately sold the stock certificates, which he had obtained from Holcomb, and converted the money. It will be observed that the facts in the case of Hoovel v. State, supra, are not similar to the facts in this case.

Being of the opinion that the facts in this case as disclosed by the record show a case of swindling and not theft, it is, therefore, ordered that the judgment of the trial court be, and the same is, reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State has filed a motion for rehearing, insisting that the representations made by appellant to Fuhrmann, while in some respects referring to present facts or past events, in part, at least, related to the execution of a note and deed of trust on property intended to secure the payment of the five hundred dollars advanced by Fuhrmann, and that the representations as to the execution of the note and deed of trust referred to a transaction to occur in the future; and therefore, that we reached a wrong conclusion in our original opinion holding that if appellant was guilty of any offense it was swindling and not theft by false pretext.

As we understand the facts, the State's position can not be maintained. In his direct examination Fuhrmann testified as follows: "After this check was signed by me and delivered to Mr. Speckels I got a note and deed of trust from him."

This statement, standing alone, might justify the State's position; but Fuhrmann immediately proceeding with his testimony said: "The deed of trust was made out before I let him have this money, because he was working on it, but he did not actually deliver the note and deed of trust to me until after he got the check. I don't know exactly how long it was afterwards that he delivered the note and deed of trust to me, but it wasn't as much as a month—just a few days. I have the note and deed of trust here. This is the note and deed of trust which were delivered to me by Mr. Speckels. They were *not* delivered to me on the *second* of *August, it was the fourteenth; the check is dated August 14, that is the actual date of the check, and the deed of trust and the note were delivered on the fourteenth; the papers were delivered on the same day as the check.*"

It will be borne in mind that the actual date of the note and deed of trust was August 2, twelve days before the check was issued on the 14th. As we understand the record, during the two weeks following the date of the note and deed of trust negotiations were proceeding between Mr. Fuhrmann and Mr. Speckels with reference to the loan. Fuhrmann seemed undecided about the matter and it was not until the 14th that Mr. Fuhrmann concluded to let him have the money. Considering the testimony of Mr. Fuhrmann in its entirety, it appears clear that the delivery of the check by Fuhrmann to Speckels and the delivery of the note and deed of trust by Speckels to Fuhrmann were contemporaneous transactions. There is no complaint by Mr. Fuhrmann that Speckels repre-

sented that he would execute a note and deed of trust, which he never in fact executed. If this were true the principle announced in New v. State, 83 S. W. (2d) 668, relied upon by the State in the motion for rehearing, would be applicable. Under the facts we do not think it is at all applicable here. Mr. Fuhrmann was complaining that Mr. Speckels represented that the property upon which the deed of trust was executed was clear from any prior encumbrance when in fact it was not, and it was upon this representation that Fuhrmann relied. He said this very clearly in his evidence, as follows:

"I stated that Mr. Speckels told me the property was clear. I believed that statement and relied on it. Had it not been for that statement I would not have loaned him the money. * * * I relied wholly upon the statement of Mr. Speckels and gave him the money for the purchase of that note and deed of trust with the understanding that the property was clear. * * * I intended to give him the money, and did give it, for the purchase of this note and deed of trust. I intended for him to keep the money and I keep the note and deed of trust—provided it was good—that is, acting on the representations he had made that the property was clear. The representation that he had made was the sole moving thing that influenced me to part with my money; if he had not made the representation that it was clear and if I had not believed him, I never would have acted on it."

If we go to the testimony of appellant in regard to the time of the delivery of the note and deed of trust to Fuhrmann it indicates that the note and deed of trust were executed on August 2nd and had been delivered to Fuhrmann and were held by him pending his decision as to whether he would let appellant have the money. Appellant's testimony in regard to the matter is as follows:

"Mr. Fuhrman later turned over to me the check for five hundred dollars * * * I presume that was about ten days after he had the papers, I don't know exactly, but I believe about a week or ten days after the papers were written."

On cross-examination he testified: "I had delivered the deed of trust and the note to Mr. Fuhrmann at the time Mr. Fuhrmann delivered this check to me. I don't recall just how long it was before this check was executed that I had delivered the note and deed of trust to Mr. Fuhrmann, but I recall that at the time it was agreed that they were going to accept this deed of trust and note it was around August 2. * * * I delivered them about a week or ten days before this check was delivered

to me. I say now I delivered this note and deed of trust to Mr. Fuhrmann before he executed this check and before I got any money on it."

Without reference to appellant's testimony, however, it appears from the quoted testimony of the State's witness, Mr. Fuhrmann, that the facts of this case make it swindling.

The State's motion for rehearing is overruled.

*Overruled.*