### R. A. PARTEN V. THE STATE.

No. 21765. Delivered February 11, 1942.
Rehearing Denied April 15, 1942.

The opinion states the case.

*Gordon R. Wellborn*, of Henderson, *Seale & Lowery*, of Nacogdoches, and *Ben L. Parten*, of Franklin, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Swindling is the offense; the punishment, two years in the State penitentiary.

The State charged that appellant swindled Josie Handley out of $100.00 in money by representing to her "that they, the said

R. A. Parten and Bunkum Champion and Deward Reeves had on the 4th day of December, 1940, been to the State Insane Asylum at Rusk, Texas, and had made arrangements at said Asylum in Rusk, Texas, for the admittance of T. F. Handley, an insane person and the husband of the said Josie Handley, into said Asylum upon payment of a Sanitarium fee of One Hundred Dollars." The foregoing constituted the only allegation of a representation on the part of appellant. Such representation was charged as false by the following allegation: "when in fact and in truth, the said R. A. Parten and Bunkum Champion and Deward Reeves had not been to the State Insane Asylum at Rusk, Texas, on said date and while there made arrangements for the admittance of the said T. F. Handley into said Asylum upon payment of a Sanitarium Fee of One Hundred Dollars and when, in fact and in truth no fee was to be charged at said Asylum for the admittance of an Insane Person."

The facts, from the State's viewpoint, show that appellant, a doctor, had, for some time prior to the alleged offense, been attending, professionally, T. F. Handley (the husband of Josie Handley), whose condition, just prior to the alleged offense, was such as to require constant attendance and nursing, as a result of which people would "come in and sit up with him from time to time at night." Among those so attending the husband were Bunkum Champion and Deward Reeves, co-indictees with the appellant.

On the morning of the alleged offense, Champion told Mrs. Handley, the injured party, that he had that morning taken appellant to Rusk, and that appellant had there made arrangements to get her husband into the asylum at that place, provided she was willing to pay $100.00 as a sanitarium fee. To this Mrs. Handley replied that, before she would go further into the proposition, she wanted to talk with the appellant and see what arrangements had been made, and directed Champion to get the appellant and come back. Champion left, and later, on the same day, returned with appellant and Deward Reeves. Mrs. Handley then held a conversation with appellant; and as to what occurred between them is best shown by quoting from her testimony, as follows:

"At that time I talked to Dr. Parten out in the front yard and I asked him if he had been to Rusk that morning and he said he had; I then asked him if he had made arrangements to put my husband in the sanitarium and he said he had and I told him that I understood from Bunkum Champion that I

would have to pay $100.00 for a sanitarium fee and I asked the doctor if I had to do that and he said I did, and so I said that it would take everything I had but if you are going to put him in the sanitarium where he will be treated and cared for I would be willing to sacrifice what little I had. While we were having that conversation Bunkum Champion and Deward Reeves were on the inside of the house; they went in there before I ever told them that they could take my husband and while I was trying to find out from Dr. Parten what sort of arrangements he had made they were taking my husband out of the bed. After Dr. R. A. Parten told me that the sanitarium fee would be $100.00 I delivered that amount of money to him in my front yard. I gave him five twenty dollar bills. I think he put that money in his pocket right there at the time but I dont know about that. I paid him that $100.00 because he told me that if I was willing to pay it to get my husband in that sanitarium for the sanitarium fee he could do it and I asked him, 'Now, doctor, are you going to pay that sanitarium fee down there,' and he said, 'Yes,' and I said, 'You will take care of it for me,' and he said, 'Yes.' At the time I was delivering the $100.00 in money to Dr. Parten to be used in paying the sanitarium fee at Rusk to get my husband into the asylum I certainly believed that was what I paid the money to him for and I thought he was going to do the right thing and get my husband in the sanitarium to be treated. I certainly did believe what the doctor told me to be true about the sanitarium fee being $100.00 and that it would have to be paid before my husband could get into the asylum."

Almost immediately after the money had been paid, the three (appellant, Champion and Reeves) went into the house, got the husband, and left with him in Champion's car. Appellant left his car at the Handley home. Later, on the same day, all three returned, when Mrs. Handley made inquiry of appellant if her husband had been placed in the asylum, to which he replied in the affirmative. She then asked if the money had been paid, and if he had gotten a receipt showing such payment. Appellant advised her that he had paid the money, but had failed to get a receipt. Mrs. Handley insisted that she wanted a receipt, and, with some reluctance, appellant signed a receipt to her, the effect of which was that Mrs. Handley had paid him $100.00 as a sanitarium fee. Before appellant left on this occasion, Mrs. Handley inquired of him if she owed him anything, to which he replied in the negative

The foregoing facts are shown by the testimony in chief of Mrs. Handley. Upon cross-examination, and as touching the purpose or intent with which she delivered the money to appellant, she said: "I gave Dr. Parten the $100.00 to take to the hospital; I did not intend to give it to him but I intended for him to pay it on the sanitarium bill. I gave him the $100.00 to take to the hospital and I thought that is what he intended to do and I relied on that promise that he would take the $100.00 to the hospital."

It was further shown that appellant carried the husband to the asylum at Rusk and tendered him for admission, and that, notwithstanding the fact that the institution was then in possession of a transcript of the proceedings showing the husband to have been duly tried and convicted as an insane person, in the County Court of Rusk County, Texas, admission of the patient was refused because he had not been presented through or by the county judge of the county. Appellant left, leaving the husband sitting in an office in the institution. Appellant did not pay the money to the asylum. No fee was necessary or required to be paid for admission of patients therein. The husband was subsequently admitted to the institution.

Appellant, testifying as a witness in his own behalf, admitted the receipt of the money. He denied that it was given or paid to him by Mrs. Handley for the purpose and under the circumstances and conditions she claimed. To the contrary, he said that the money was paid to him for professional services he had rendered in attending the husband, and that, at the time of the payment thereof, Mrs. Handley then owed him about $109.00 for such services. He denied that he made the representations as claimed, and asserted that he acted in good faith as a physician in carrying the husband to the asylum. Two days prior thereto, the husband had been duly convicted of being a person of unsound mind. A judgment of the County Court of Rusk County, showing such conviction and ordering that he be placed in one of the state hospitals for the insane, was introduced in evidence.

As tending to corroborate the defensive theory that Mrs. Handley was indebted to him for attending the husband, appellant introduced testimony showing the distance he was required to travel in making the professional calls, the price usually charged for such visits, as also the number of visits and the prescriptions he had made and written.

Appellant filed an application for a suspension of sentence and supported same by the necessary proof. He placed in issue his general reputation for honesty and fair-dealing, and several witnesses testified that such reputation was good. The State, in the cross-examination of some of these witnesses, developed from them that appellant bore a good reputation for being a peaceable and law-abiding citizen. However, the State, in rebuttal, proved, by several witnesses, that appellant's general reputation for being a peaceable and law-abiding citizen was bad.

The sufficiency of the evidence to support the conviction is challenged, necessitating the stating of the facts at some length.

It is insisted, among other things, that inasmuch as Mrs. Handley parted with her money, and delivered it to appellant, solely for the purpose of having appellant pay it to the asylum, the offense of swindling is not shown. When the State's testimony upon this issue is examined, it shows that appellant made a false representation of a then existing fact and of a past event, in that he represented that he had already made arrangements for the admission of the husband into the asylum upon payment of $100.00. Such facts further show that, when Mrs. Handley delivered the money to appellant, she intended to part with both the title and possession thereof. She never intended that it should be returned to her under any condition or circumstance. The inducing cause for her to give appellant the money was the false representations.

It is apparent, therefore, that the essential elements necessary to constitute the offense of swindling are shown by the testimony. See Nash v. State, 115 Texas Crim. Rep., 324, 29 S. W. (2d) 359; Speckels v. State, 130 Tex. Cr. R. 639, 95 S. W. (2d) 122; Bond v. State, 138 Tex. Cr. R. 394, 136 S. W. (2d) 865; Branch's P. C., Sec. 2626. The facts are deemed sufficient to support the conviction.

Appellant's affirmative defense that the money was paid to him for professional services rendered was submitted to the jury in the following language:

"(9). If you should believe from the evidence in this case that Mrs. Josie Handley did pay to R. A. Parten, Bunkum Champion and Deward Reeves, or either of them, the sum of $100.00 but if you should further believe that Mrs. Josie

Handley paid the said money to the said R. A. Parten as a fee owed him for services rendered to her husband, then the defendant would not be guilty of swindling; if you should so believe then you will acquit him or if you have a reasonable doubt thereof, you will acquit him."

It is insisted that such charge was too restrictive of appellant's rights, and that he was entitled to have the jury instructed, in effect, that, if, at the time the money was paid to him, appellant, believed that it was paid to him for services rendered, or on account therefor, he would not be guilty, even though the injured party might have believed or might have intended to the contrary. A special charge embodying this viewpoint was requested and refused.

Appellant's contention is that, under the facts, his defense was entitled to rest before the jury upon what they believed was in his mind at the time, and not upon what might have been in the mind of, or might have been intended by, the injured party, as to the purpose for which the money was paid to him.

The facts show that appellant, in his testimony, was positive that the money was paid to him for services rendered. The injured party, in her testimony, was equally positive that the money was not so paid to him but that it was for the purpose of being paid to the asylum. Thus the single issue was drawn under the facts. There is no suggestion in the testimony of either party of a mistake of fact, or that either party was laboring under a misapprehension as to the purpose for which the money was being paid. The conclusion is reached that the charge as given and the issue as therein presented adequately and fairly protected appellant' rights.

Several bills of exception present the following matters:

Appellant was arrested on the first or second day following the commission of the offense and charged therewith. Upon cross-examination, and as touching his condition at the time of said arrest, appellant was asked by State's counsel if, at that time, he was not drunk, to which he replied in the negative. He was then asked if he had not been drunk during that day (the day of his arrest), to which he made the same reply. To the asking of such questions appellant's counsel objected because whether appellant was or was not drunk at the time of his arrest was irrelevant, immaterial and prejudicial. The objection was overruled.

Appellant insists that these bills of exception reflect reversible error. While it may be conceded that it was not a material inquiry in the case as to whether or not appellant was drunk at the time of his arrest, yet we find in this record no less than eleven different instances where witnesses were permitted to testify, without objection, that, prior to, at the time of, and subsequent to, the commission of the alleged offense, appellant was drinking or was under the influence of intoxicating liquor. Not having objected to this testimony, appellant is not in position to urge that the mere asking of the questions constituted reversible error.

Bills of exception appear complaining of argument of State's counsel. In none of these bills of exception did the argument complained of violate any mandatory or statutory rule. In the light of the facts, the minimum punishment assessed, together with the further fact that, upon objection, some of the argument was withdrawn from the jury's consideration, we are unable to reach the conclusion that appellant has been injured thereby.

The indictment followed established precedents and appellant's attack thereon by motion to quash was properly overruled. See: Cannon v. State, 15 S. W. 117; Bennett v. State, 95 Tex. Cr. R. 198, 253 S. W. 289; Willson's Texas Criminal Forms Annotated, Sec. 723.

The bills of exception not discussed have been examined and are overruled.

No error appearing, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant renews his insistence that the trial court should have given his requested charges to the effect that if appellant believed the one hundred dollars was paid him for professional services he should be acquitted. The instruction given on the subject is set out in our original opinion, and it is not necessary to repeat it here.

The record shows that after appellant and his companions returned to the home of Mrs. Handley after taking her husband to the sanitarium she asked appellant if he brought a receipt from the institution for the one hundred dollars, and upon being advised that he had not she insisted that he give her a receipt for the money. He demurred, but finally did sign a receipt, which was introduced in evidence, and which reads:

"Nov. 4-40.

I Mrs. Josie Handley paid Dr. Robert Allen Parten one hundred dollars, *Sanitarne* fee.

R. A. Parten."

In his testimony appellant admitted executing the receipt but claimed that he did not and could not read it on account of impaired eyesight. In regard to the purpose of the payment he testified as follows: "I have never denied receiving that one hundred dollars, but I did not tell her (Mrs. Handley) at any time that it was for the purpose of paying a sanitarium fee. That one hundred dollars was for professional services rendered. I did not receive that one hundred dollars for a sanitarium fee, and I did not intend to receipt for it as such."

On cross examination appellant testified that he kept all of the money for himself, and denied that he gave sixty-five dollars of it to Champion and Reeves, his co-defendants. The State introduced statements made by appellant before the grand jury after proper warning that he kept thirty-five dollars of the money and gave sixty-five dollars of it to Champion and Reeves.

Under the facts—which have again been closely examined—we think the issue raised was covered by the instructions given on the subject.

We have again examined the record in connection with the bills of exception urged by appellant in his motion for rehearing. None of the bills is thought to present reversible error in the light of the record, and a discussion of said bills is not called for further than appears in our original opinion.

The motion for rehearing is overruled.